## CHANCE v. BUXTON.

## BUXTON v. CHANCE et al.

### No. 12851.

United States Court of Appeals
Fifth Circuit.

Oct. 28, 1949.

See also 170 F.2d 187.

Henry T. Chance, Augusta, Ga., C. L. Hilton, Sylvania, Ga., for appellant.

Dunbar Harrison, Savannah, Ga., J. Henry Howard, Sylvania, Ga., for appellee.

Before HUTCHESON, McCORD, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

Alfred Oliver Chance, a citizen of North Carolina, sued Preston B. Buxton, a citizen of Georgia, to have declared null and void a purported deed from Mrs. J. C. West, (otherwise called Mrs. Frances Barto West), dated July 9, 1937, to Julian A. Buxton covering a tract of land in Georgia containing 401 acres worth more than $3,000, and to cancel the same, because the deed reserved full title in Mrs. West for her lifetime, and because it was never delivered by her nor intended to be delivered; and also to have declared void and to cancel a deed from Julian A. Buxton to Preston B. Buxton dated Dec. 28, 1944, covering the same land, because Julian A. Buxton did not have mental capacity to make a deed and it was induced by fraud and undue influence. The complainant asserted title in himself under a deed in fee simple without warranty from Mrs. West dated April 11, 1946. The answer denied the averments of the complaint as to the invalidity of the attacked deeds. Mrs. West, who is still in life though 87 years old, was made a party, as was the administrator of Julian A. Buxton, who died January 14, 1945. Both sides asked for a jury trial. Two questions only were submitted to the jury, which with the answers returned are: "1. Was there a legal delivery of the deed from Mrs. J. C. West to Julian Buxton? Yes. 2. Was there a legal conveyance from Julian Buxton to Preston Buxton? No. M. W. Lippett, Foreman of Jury." The court then decreed that the deed to Julian Buxton was a deed and not testamentary in character, and vested title in Julian Buxton subject to a life estate reserved to Mrs. West, and denied cancellation of it as a cloud on title, but removed as a cloud the deed from Julian Buxton to Preston Buxton which the jury had found invalid. Chance appeals from the judgment because it did not annul both deeds. Preston Buxton appeals from it because it annulled his deed from Julian Buxton and held the title, subject to Mrs. West's life estate, to be in the estate of Julian Buxton.

1. The attack on the deed from Julian Buxton to Preston Buxton on the ground of fraud and undue influence was abandoned in the trial, and only that for mental incapacity was submitted to the jury. A motion to direct the jury that there was no sufficient evidence to show such incapacity was denied, and renewed and overruled after verdict, and a new

trial refused. This is the only error presented in Preston Buxton's appeal. We think there was no error in submitting the question to the jury. Julian, about 66 years old, had been carried to the hospital unconscious and in a critical state on Dec. 19, 1944. The deed was signed by his mark on Dec. 28. He died Jan. 14, 1945. It was attested by a doctor, who was the proprietor of the hospital, and by a stenographer who was a notary. These both testified that the deed was read to Julian and he said it was what he wanted and they thought he understood it, though he was unable to sign. The object of the deed as stated by the doctor was to turn over all the property of Julian to Preston, who was to take care of Julian, as Julian had no one to look after his bills, and though he had some money it looked like he was going to have to stay in the hospital a long time and he did not have enough money to do it. The deed recites that Preston is to take care of Julian during Julian's life; and conveys, besides the land, four mules, a two horse wagon, farming implements, equity in 11 bales of cotton, $136.14 in bank, 75 bushels of corn, hay, and all other personal property of Julian.

Mrs. West, however, and another witness testify by way of impeachment that the stenographer stated to them that Julian Buxton did not know a thing when he signed the deed, that he did not have any mind at all. Julian's hospital nurse testified he was unconscious when he was brought to the hospital, and she fed and looked after him every day; his physical condition improved some but his mental condition was bad, his mind plumb blank, talking all the time but there was no sense to it. She was not present when the deed was signed. Three other witnesses who saw Julian frequently while in the hospital testified to a like condition. One of them testified further that the doctor told him Julian was not getting better, but was getting worse all the time. As already stated he died sixteen days after the deed was signed by mark. We think this evidence justified submitting to the jury the question of mental capacity to make this contract at the time it was made. There is no complaint of the charge given the jury. The judge has approved the verdict. We find no cause to reverse on Preston Buxton's appeal.

2. On the appeal of Chance, the only question made is whether the judge erred in holding the paper signed by Mrs. West to Julian Buxton in 1937 was a deed rather than a will. That it was delivered validly is settled by the jury's answer to the first question, on which no attack is now made. We therefore have a delivered instrument in the form of a deed, attested by two witnesses, as the Georgia law provides for a deed, reciting that it is signed, sealed and delivered, and purporting to deal with fully described land, and warranting the title. It recites a consideration of "love and affection to her nephew, the grantee herein, and the further consideration of one dollar cash in hand paid", and for that consideration the maker "does hereby grant, bargain, sell and convey, subject to a life estate reserved in said land, all the following property", describing it and referring to it as having been acquired under a named "will which is duly probated and recorded in said county." This language in the present tense clearly conveys the title subject to a life estate reserved to the grantor. It shows too that the grantor is aware of wills which have to be probated. The habendum clause however reads: "To have and to hold the above bargained and described property, together with all and singular the rights, members and appurtenances thereto belonging or in anywise appertaining to the only proper use, benefit and behoof of the second party, his heirs and assigns in fee simple, the first party hereby reserving the complete control, title, interest and profits of said land for and during the period of her natural life and after her death to be held, owned and used by said grantee in fee simple, title to the same being hereby warranted against the claims of all persons whatsoever." The words "reserving complete * * * *title* for and during the period of her natural life" are claimed to be effective to postpone the operation of the instrument altogether till the maker's

death, so that it is only a will, which remains revocable till her death, and as Mrs. West still lives it is without effect as an evidence of title; and was incapable of probate if she had died without revoking it, because it has only two witnesses and the law of Georgia requires three for a will. Code, § 113-301.

Whether somewhat similar instruments were wills or deeds has been a question before the Supreme Court of Georgia many times during the century of the Court's existence, the decisions appearing to be not wholly harmonious. The earlier ones leaned apparently to treating them as testamentary, and all the cases relied on here by Chance were decided prior to the 80th Georgia. The later ones look the other way. In White v. Hopkins, 80 Ga. 154, 4 S.E. 863, 865, as here, the instrument in the form of a deed, conveyed in fee simple, but the habendum clause said, "the title" shall remain in the grantor during his lifetime, and at his death to vest in grantee if the service promised has been rendered. The court held that the true intention expressed was to convey title to the grantee on a condition subsequent, the grantor reserving a life estate. Said the Court, "To give the paper this construction, the whole of the instrument will stand, and the intention of the grantor will thus be carried out. To construe it as a will, the intention of the grantor would be defeated, because it cannot be set up as a will, having only two witnesses." Eleven prior decisions are cited in support. The court then held that if the interpretation were wrong, there would be a repugnancy between the granting clause and the habendum and under a cited section of the Georgia Code quoted below, the former must prevail.

In Owen v. Smith, 91 Ga. 564, 18 S.E. 527, 528, there was no repugnancy between clauses of the instrument, and a clear provision that the maker "reserves to herself a life estate" with full control, the grantee to live with and care for her, and whatever is left at her death to belong to grantee in fee simple. The court held that while some of the language imported a present conveyance with reservation of a life estate, and some indicated a purpose to postpone the vesting of anything in the grantee till her death, so that the construction was doubtful, the safer and better construction was to hold that it intended to pass an interest at the time of delivery and to postpone only the possession and use, and that it was not testamentary but effective as a deed.

In West v. Wright, 115 Ga. 277, 41 S.E. 602, the many previous cases were brought under scrutiny and found not to be in complete harmony. The Court says: "There has not been so much difficulty as to the rule for testing the character of the documents, but the principal trouble has arisen in applying it to the varying phraseology employed. The original tendency was towards holding that papers indicating an intention to postpone enjoyment by the persons claiming to be grantees till after the death of the persons executing the papers should be classed as wills. This tendency in time yielded to another, namely, that it was the sounder policy in a case of doubt to declare that the instrument was a deed, and thus make it effectual, when holding it to be testamentary would, for want of the requisite number of witnesses, render it nugatory. The true test, of course, is the intention of the maker, which is to be gathered from the terms of the paper. * * * It is to be noted that no one of the previous cases is absolutely binding as authority, one way or the other, in the case now before us, for in no one of them was the instrument exactly like that now to be construed. A careful examination of them all constrains a majority of us to adhere to the modern tendency of dealing with papers of this character." The decision is expressed in a brief headnote, written by the court: "An instrument attested as a deed, and in all respects in the form of a deed, should, though it contains the words, 'This deed to take effect at my death,' be treated, not as a will, but as a conveyance passing title in praesenti, with right of possession postponed till the death of the maker." There has been no departure from this in later decisions.

The governing principles indeed are statute law in Georgia, stated in the first Code adopted in 1863 and repeated in all of them, appearing in the present Code without change. In the Chapter on Deeds: Section 29-103: "A future interest or estate may be conveyed by deed; but it must operate to transfer the title immediately, or the instrument will be testamentary and revocable." Section 29-109: "If two clauses in a deed are utterly inconsistent, the former shall prevail; but the intention of the parties, from the whole instrument, should, if possible, be ascertained and carried into effect." In the Chapter on Wills: Section 113-101: "A will is the legal declaration of a person's intention as to the disposition of his property after his death." Section 113-102: "No particular form of words is necessary to constitute a will. In all cases to determine whether an instrument is testamentary in character or not the test is the intention of the maker to be gathered from the whole instrument, read in the light of the surrounding circumstances. If such intention is to convey a present estate, though the possession is postponed until after his death, the instrument is a deed; if the intention is to convey an interest accruing and having effect only after his death, it is a will." Looking to these statutes, we are satisfied that Mrs. West had no thought she was making a will. Certainly the draftsman, evidently a lawyer, had no such thought. Throughout her testimony she refers to it as a deed, and she speaks twice of her father's will, well knowing the difference. The reservation of a life estate by a testator would not make sense, for his testament can convey nothing till after death and probate. We are sure that Mrs. West intended this instrument to operate as a deed when she should deliver it. There is a probability under the evidence that she did not at once deliver it, but the jury has found she eventually did deliver it, fulfilling the attestation clause which recited delivery. No one delivers a will. It is revocable, and the testator, or someone for him, keeps it. She delivered this paper as a deed, and its provisions, fairly interpreted, express an intention to reserve a life estate, but to grant presently a remainder in fee to the grantee. The court did not err in so construing it.

Judgment affirmed in both appeals.